Good morning, your honors. Jonathan Kirschbaum, Office of the Federal Defender for the District of Nevada, for Petitioner-Appellant Christian Walker. May I reserve two minutes for rebuttal? Yes, keep an eye on the clock, sir. Thank you, your honor. A remand for an evidentiary hearing on equitable tolling is necessary here. Walker presented sufficient allegations to establish equitable tolling on two grounds. One, the unbroken chain of attorney misconduct, and two, actual innocence. Walker should be given the opportunity to fully develop those factual allegations. What is clear here is that the district court's factual review was insufficient. It was both shallow and speculative, rather than the fact-intensive inquiry that was necessary here. In fact, the district court denied it in review of the state court record. This means that the district court decided whether a reasonable juror would have convicted Walker without even reviewing the trial evidence. Further, there were facts in that state court record that fully supported the equitable tolling argument. Of course, the district court didn't even review any of it. Turning to the allegations themselves, the egregious attorney misconduct represents a circumstance beyond petitioner's control that was the proximate cause for the untimely filing. Appellate counsel abandoned him. Post-conviction counsel operated under a gross misunderstanding of post-conviction law, mistakenly believing that he had up to five years to file the petition. And he stuck to that belief, even in the face of petitioner asking him to file it quicker. As in Holland and Doe and Spitzen, this is a type of attorney misconduct that represents a ground for equitable tolling. Well, isn't it fair to say, though, though, equitable tolling in the context of habeas petitions ordinarily is justified in extraordinary circumstances when, in fact, there is newly discovered evidence which suggested that the person was innocent? And if that is, in fact, the case, isn't it also true in this particular fact pattern that the trial lawyer, the person who conducted the trial, was, in fact, even aware, was aware of the potential affidavit that Johnny Walker was going to submit? Well, actually, the Ninth Circuit, in a decision called Griffin, has held that it's not newly discovered evidence. It's newly presented evidence. And under, look, the Gateway claim, it's not whether or not it wasn't discovered before trials, whether or not the jury heard it. And that seems particularly apt in a situation like this, where the underlying claim is ineffective assistance of trial counsel for failing to present that evidence. And I think that that's sort of the point that you're making actually underscores how problematic the district court's analysis was here, because there is evidence in the State court record that supports the reliability of that affidavit, meaning he made it at a time when he was facing legal jeopardy, when it was before trial. And that's why the two cases were severed. But isn't it just equally true that the trial lawyer could have determined, because he, in fact, was aware of this willingness of Johnny Walker to testify, could very well have determined that his testimony would not have been credible and would have impacted the defense in a negative way, and so therefore made a decision not to call him as a witness? Well, I think that's a question for another day, meaning whether or not attorney's the attorney's conduct here was reasonable or unreasonable. However, at the same time, I think that does sort of underscore a problem with the district court's analysis here, is the district court completely found that the affidavit was unreliable essentially as a matter of law, however, without even hearing from Johnny Walker and deciding whether or not he was credible. And as stated before, there were facts in the state court record to support the reliability, not just the fact that he made it at a prior time, but also it was completely consistent with the trial evidence that this was Johnny Walker acting on his own impulsively and Christian Walker was simply present at the scene of a crime, nothing more. And going back to the ---- First of all, you said something that sort of conflicts with the my reading of the case. You said that Johnny Walker made the affidavit, which has never surfaced, made the affidavit, all that we see is a letter, before he was convicted in the separate trial? Well, if you ---- I'd like to refer the Court to the excerpts of record on page 252. That is where the trial court granted the severance motion. And attaching and attached to that order was counsel's affidavit in which he stated that it has come to his attention. He didn't say exactly how, but he did say it has come to his attention that Johnny Walker will provide exonerating testimony at Christian Walker's trial, and that's the precise reason why the trials were severed. So whether it was the letter that ---- I agree with Your Honor that that affidavit definitely postdates the trial, but his offer of exonerating evidence predates the trials when he was facing legal jeopardy, and that completely runs counter to the district court's analysis here. Can you just address the Nevada Supreme Court's refusal to look at the affidavit? What ---- Well, the affidavit actually, that comes up in, I guess, that second petition. And I actually ---- and I would say that the second petition isn't quite relevant to this Court's analysis on the affidavit. That was actually the Nevada State Court just reviewing it with regard to their own State rules, and this question here is a Federal rule, whether or not we meet the SWOOP gateway. And I don't know if any deference needs to be paid to the Nevada Supreme Court. Well, not so much deference, but just is that ---- is the affidavit properly before us is, I guess, what I'm getting at. Oh, yeah. There's ---- it's ---- because we're raising this as a gateway claim, a petitioner can come forward with any type of reliable and, as this Court has found, newly presented evidence that was presented here. It had never been presented in the State court at all? Yes. This is a question of Federal law that doesn't ---- this gateway determination is a question of Federal law. Doesn't that conflict with Pinholster? Well, this is actually an evidentiary hearing based on a question of Federal law, not based ---- Pinholster is not relevant, because Pinholster only has to do with whether or not relief can be granted under the standard of review 2254-D1. This isn't a 2254-D1 claim. This is actually just more of a question, a Federal law question as to a procedural point. Can I ask you this? He's already finished serving the sentence that you're trying to attack here. How do we have jurisdiction? Well, it's ---- the petition was filed when he's still in custody, so there's jurisdiction. The case isn't moot because there will be an impact if relief is granted here. He has a ---- he was convicted of another crime and has a consecutive sentence. So if this conviction is vacated, then that time will be credited towards that sentence. And so there is still an impact on his sentence and the time that he has to serve. He was convicted of a second-degree murder. That's correct. Subsequent to this particular offense. That's correct. And in fact, it would not necessarily result in crediting that period of time. He would theoretically go back for a trial at this particular point. Well, that's true. And I guess if he gets acquitted, then it would be. But that ---- but it would have a direct impact on his sentence if he did ---- if the case did resolve in a favorable way for him.   Thank you, Your Honor. Good morning. My name is Tom Gover. I'm with the Nevada Attorney General's Office, and I represent the warden in this case. This is an old case. The habeas petition was filed back in 2004. And so in defense of the U.S. District Court and how they handled this actual innocence exception to the statute of limitations, this predates Lee v. Lampert, even though the district court got it right. They presumed that actual innocence could be an equitable exception to the statute of limitations. Can I just ---- so the trial court ---- I mean, I'm sorry, the district court here never reviewed the State trial court record? How could you possibly make a determination that this evidence wouldn't have mattered if you don't even have the underlying trial record? Right. Well, the order ---- and you know what? The reason why the district court doesn't have the trial court record is I didn't provide it to them. The ---- in a case here where you file your petition late, four years late, right, it is the burden of the petitioner to establish his justification for filing it late. He didn't file it. I didn't file it. If you look at the order, though, I believe the United States district court's decision was accurate in that when they look at the affidavit, the proffered new evidence, right, by no stretch of the imagination is it new evidence. It isn't. I think counsel is right, though. It doesn't have to be newly discovered. It has to be newly presented. And this, you concede, it wasn't presented at his original trial, right? Right. It wasn't presented. But even Christian Walker, if the new evidence is that Johnny Walker would come and testify that it was all me, I'm the one that shot David Demas, my cousin Johnny or Christian had nothing to do with it. That's exactly what the affidavit said. He knew about that on the day of the attempt murder of David Demas, September 22, 1997. And so even though if you look at Lee v. Lampert, where it establishes what type of evidence that can allow a person to go through the gateway and excuse the 2244D statute of limitations, Lee v. Lampert says that it has to be new evidence. Lee v. Lampert not only talks about new evidence, but it also talks about how convincing that evidence needs to be. So it's a new view to you in what sense, newly presented or newly discovered? It says new evidence that hadn't been presented at trial before. Which this hadn't. You conceded that. Yes. It has not been. The Johnny Walker testifying trial did not happen. The theory of the case that Johnny Walker did this all on his own and that Johnny Walker was the one that pulled the trigger is not true. If you look at the, and I cited in my statement of facts, the argument of the State's case. The State's case was never that Christian Walker was the guy who pulled the trigger. The State presented a case where they established how he had lost his necklace and had gone through this spectrum of trying to get his necklace back. First he confronts the victim and goes, sure. I think we know what the facts were, but let me ask you this. If a jury were to believe Johnny Walker's affidavit, let's say he came in, he testified consistently with his affidavit, wouldn't a jury necessarily have to acquit Christian Walker? What other evidence did you have on the other side of that? Well, we had Josh Martinez. Josh Martinez testified that after the fact, he's sitting around hanging out with Christian Walker, playing video games or whatever, and is hearing this weird conversation between him and his mother about turning himself in. And it was Christian Walker that told Josh Martinez that, you know, this guy took his necklace and that he shot him. I read Josh Martinez's testimony, and I got to tell you, as a former prosecutor, I didn't think it helped that much. But what else did you have besides his testimony? Well, we had Josh Martinez's testimony, which I believe does the conflict. We also have the circumstantial evidence of intent. Why would – what problem did Johnny Walker have with David Demas? Absolutely none. Wasn't there initially when the kids are out smoking pot at the school. It's not his necklace. The only way that he can know anything about what happened had to be because Christian Walker went to Johnny Walker and told him about it. After he had gone to his mommy, after he has gone to the police. This guy called the police to try to help him get the necklace back.  And he didn't get it, did he? That seems completely inconsistent with someone who is going to go and try to murder someone as revenge for having stolen their necklace. He tried to get the police to help him. Well, I think it's consistent with the idea that he was going to get that necklace back no matter what. You know what? To his credit, he was going to use the least – the least obtrusive means to do it, right? First, he confronted the guy. Then he got his mommy. Then he went to the police, right? But after that didn't work out, what was he doing? Hanging outside of David Demas's house at 11 p.m., right, waiting for him to come out. And now we have – they go to school, go to the dark area. All of that stuff was argued in the state's case as circumstantial evidence of intent. The fact that as they were walking out to the school, Christian Walker is reassuring David, oh, man, I don't think that you took it, those types of things. Now, a jury could take that either way. Maybe that's the way Christian really felt, right? But that is their province. They are the triers of fact. They could look at that and see, yeah, that is consistent with him coaxing this guy out to the school, so Johnny could shoot him in the neck. What happens afterwards, right? At that point in time, if in fact Christian had nothing – didn't know anything about it, right, he knows that Johnny knows what his intent was. There's nothing new about what's presented in the affidavit. But what happens? Christian takes off running. It's weeks later before he's taken into custody. He's hanging out in his house with Josh Martinez, arguing with his mom about whether or not he should turn himself in. Has Josh Martinez hold a gun for him so it's not found? Those are all things that were in front of that jury that that jury could consider and support the intent element for attempted murder. Okay, but the district court here basically said that Johnny – the court found Johnny Walker's affidavit just inherently unreliable. Yes. And how could the court make that determination without at least having seen Johnny Walker testified at an evidentiary hearing? You know, I think he could look at that affidavit and he could go, this man, they could dust him off from Ely State Prison, bring him down here. I can look into his eyes and determine if he's being credible or not. If he says everything in this affidavit as he's got it laid out, it's not trustworthy. It's not believable. And the district court – On what basis, though? We know from Christian Walker's lawyer that Johnny was going to testify consistently with the affidavit before he was even tried. He didn't, did he? I mean, that basis for severing the trials was almost a subterfuge. I mean, the reason why we want to sever the trials is because Johnny Walker is going to testify, right? Then you have the trial and then Johnny Walker doesn't testify. Well, the reason the district court judge found that he was not going to be credible or – on the basis of his ruling – was essentially that Johnny Walker was already convicted of a reduced charge and as a result had no Fifth Amendment concerns and therefore was free to say anything on behalf of his cousin. And the question is whether there is sufficient basis for the district court judge to make that conclusion without having him being dusted off. I guess, what's your expression? And testifying in front of him. Well, and that really is the point. I mean, if the court feels that it's an abuse of discretion for a judge to look at an affidavit and assume everything is true, this guy is going to come down and say all this stuff. No, he did not assume everything was true. He said no jury could possibly believe this guy given the surrounding circumstances. And I'm saying I don't think – But we're talking about the evidentiary hearing, right? Right. All I'm saying is that I don't know that our cases allow a district court judge to make a determination in an actual innocence context that somebody is just inherently unbelievable without at least seeing them testify. Well, again, that's why I pointed out that this was all happening pre Lee v. Lampert. The idea that you had actual innocence gateway to this – to Judge Dawson wasn't out there. To his credit, he went ahead and considered it, looked at the affidavit, and I think from a managing your courtroom standpoint, all right, I have this affidavit in front of me. I see what he's going to say. I understand his circumstances. I find it inherently untrustworthy. I think that is – that's the wording that he used, that it was not trustworthy evidence. So let me just ask you a practical question. If, in fact, the court was to say that you're entitled to an evidentiary hearing whenever there's a claim of innocence so that the judge has to make an individual determination as to the reliability of that testimony, cannot rely upon affidavits, what impact would that have in the day-to-day operations of the Attorney General's office? For instance, any time there's a claim of innocence case with an affidavit supporting the claim of innocence, that means there has to be essentially a hearing, and I would guess that that would happen a lot. Well, it really would undermine the statute of limitations. It's really a backdoor way of arguing your case when here – I mean, the guy had four years to file his petition, and it takes him four years. You know, maybe it takes him four years to – who knows? I mean, if we have an evidentiary hearing, right, maybe we'll find out. It took him four years to communicate with his brother at a different prison and inmate kites flying around all over the place. But was he convicted of a second-degree murder case, like, well into the service of this 4 plus 4? We're talking about Christian Walker? Yes. Yes. It was well afterwards? Yes. Is it bizarre that his lawyer waited four years to file this particular motion? Well, of course the four-year period of time had a couple of bizarre twists to it. You have the one attorney who died, and then you have the new PCR attorneys that came in and made a decision to wait for developing case law and then filed their state court petition. Those two points, I believe, are briefed sufficiently. From my standpoint, what I would emphasize is that at the district court level below, it was all about actual innocence. No one was asserting other equitable reasons for tolling the statute. It was all about, hey, my cousin, he wrote me an affidavit. That's my get-out-of-jail-free card. I mean, that's basically how it came across to the court. And I think the court not having an evidentiary hearing was not an abuse of discretion. Mr. Gover, your time has expired. Thank you very much. Thank you, Your Honor. Mr. Baum, you have two minutes. Thank you, Your Honor. There are three things that I want to address. First, I'd like to address Judge Sessions' final question about the impact of a remand here. I don't think it will have any impact on the law. The affidavit itself, the information in the affidavit still has to meet the Schlipp standard, meaning it still has to establish that if believed, if reliable, if it's credible evidence and reliable, that it's more likely than not that no reasonable fact finder would find the petitioner guilty. And this affidavit meets that standard. So before you, you know, take that next step for the evidentiary hearing, I mean, the presentation itself still needs to be sufficient. The second thing I'd like to point out is that the State of Nevada has presented, you know, arguments with respect to the trial evidence and why, you know, the jury could have still believed that Christian Walker was involved, even in light of Johnny Walker's potential testimony. However, the test here is not the sufficiency of the evidence. It's not this job, this Court's job to be combing through the evidence to find whether or not there was a theory to support the conviction. It's the Schlipp standard, and whether or not in light of this new evidence, it's more likely than not the jury would have found him guilty. And we believe that Johnny Walker's affidavit, if believed,  And then finally, it's not an excuse for the Attorney General's office to say that it's our fault that we didn't provide the records to the district court. When they answered and they made their factual arguments, it was necessary for them to provide it. That's what the rules say. And the district court didn't need to rely upon the omission of the Attorney General's office. If the district court was going to make the factual inquiry under the equitable tolling arguments, it should have obtained the record on its own. But if the district court was convinced that the factual proffer was inherently uncredible, it didn't have to have a record, did it? And our position is that that was not justifiable as a matter of law in this particular situation because the grounds that the district court relied upon were completely contradicted by the State court record, which is why this Didn't provide. Which was never provided to the district court and which the district court never on its own reviewed. Thank you very much. The case of Walker, McDaniel v. McDaniel will be submitted. And we thank counsel for their oral argument. And we go to the next case, which is the case of the United States of America versus Britain has been submitted on the briefs.
judges: Sessions, Bea, Watford